# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:11CV182-RLV-DSC

| | |
|---|---|
| ROBERT M. HICKS, )<br>　　　Plaintiff, )<br>　　　　　　　　　　　)<br>vs. 　　　　　　　　　)　**MEMORANDUM AND RECOMMENDATION**<br>　　　　　　　　　　　)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>　　　Defendant.　　　　)<br>　　　　　　　　　　　) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #12) and "Brief in Support ..." (document #12-1), both filed April 26, 2012; and Defendant's "Motion for Summary Judgment" (document #13) and "Memorandum in Support..." (document #14), both filed May 21, 2012.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

Plaintiff filed his application for Social Security Disability Insurance benefits ("DIB") and

---

[1] Pursuant to the Pretrial Scheduling Order entered on February 27, 2012, this matter is ripe upon the filing of Defendant's Motion and Memorandum. <u>See</u> Document #8. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

Supplemental Security Income ("SSI") on January 7, 2010, alleging that he became disabled on May 1, 2005. (Tr. 152-53, 156-62). Plaintiff's application was denied initially and on reconsideration. A hearing was held on November 23, 2010. (Tr. 21-65).

On December 23, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 8-20). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ also found that Plaintiff suffered from alcohol abuse with cirrhotic liver disease, pectus excavatum,[2] mood disorder possibly substance-induced, hypertension, hyperlipidemia, and chronic obstructive pulmonary disease ("COPD") (Tr. 14), which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC")[3] to perform medium work,[4] provided that he avoid all exposure to environmental irritants, be limited to performing simple, routine, repetitive tasks with no more than occasional interaction with the public, and avoid using his non-dominant left upper extremity for gross and fine manipulations.[5] (Tr. 15).

---

[2] Funnel chest, a condition of the chest in which the sternum is concave. *Dorland's Illustrated Medical Dictionary* (28th ed. 1994) (*Dorland's*).

[3] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[4] "Medium" work is defined in 20 C.F.R. § 404.1567(c) as follows:
> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

[5] Plaintiff testified that his most significant limitation was in manipulating with his left hand. (Tr. 29). As the ALJ noted in his decision Plaintiff's counsel conceded at the hearing that "such limitation was not well documented in the medical records." (Tr. 16).

The ALJ determined that in light of his RFC, age, education, and work experience, and based upon the testimony of the Vocational Expert ("V.E."), Plaintiff could perform jobs existing in significant numbers in the national economy (Tr. 19-20). The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 20-21).

By notice dated October 21, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on December 20, 2011. Notably, Plaintiff does not challenge the ALJ's formulation of his RFC. Plaintiff argues only that the ALJ erred in submitting a hypothetical to the V.E. See Plaintiff's "Brief in Support ..." at 3-8 (document #12-1). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[6] Plaintiff contends that the V.E.'s testimony does not constitute substantial evidence upon which the ALJ could base his determination because it conflicts with information contained in the Dictionary of Occupational Titles ("DOT") and other approved sources.

---

[6]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

Plaintiff initially argues that the ALJ's hypothetical limited him to simple, routine, repetitive tasks, and the V.E. addressed that restriction by stating that the four identified jobs (fast food worker *DOT* # 311.472-010, marker *DOT* # 209.587-034, checker *DOT* # 221.587-010, and packer and sealer *DOT* # 726.687-042) have a Specific Vocational Preparation Level ("SVP")[7] of two. Plaintiff contends that the SVP level fails to reflect whether a job is simple or not, and thus, the V.E. mischaracterized the four jobs. The V.E.'s testimony was consistent with Administration policy. Social Security Ruling ("SSR") 00-4p states that unskilled work has SVP of 1 or 2, and the regulations define unskilled work as work that requires little or no judgment to perform simple duties that can be learned in a short amount of time. 20 C.F.R. §§ 404.1568(a), 416.968(a).

Plaintiff next argues that since the ALJ limited him to simple, routine, repetitive tasks, he could only perform jobs that the *DOT* classified as Reasoning Level one positions. Plaintiff goes on to assert that all of the jobs identified by the V.E. were Reasoning Level two jobs, and as such, this testimony was not consistent with the restrictions posed in the ALJ's hypothetical question.

Courts in the Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have held that there is no conflict between a job classified at Reasoning Level <u>three</u> and a limitation to simple, routine, unskilled work. See, e.g., Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (holding there is no conflict between jobs classified at Reasoning Level three and a limitation to "simple, unskilled work"); Hurtado v. Astrue, No. 09-60930, 2010 WL 1850261, at *11 (S.D. Fla. Apr. 14, 2010) (holding there is no conflict between mail clerk job classified at Reasoning Level three and limitation to "simple routine tasks," and noting that "[m]ost courts which have addressed this issue

---

[7] SVP is defined as the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job. *DOT* at 1009. The *DOT* classifies SVP at levels 1 through 9, and the time needed to learn a job with an SVP of 2 is anything beyond short demonstration and up to and including one month. *Id*.

have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks, and thus no conflict existed between the VE's job descriptions and the DOT"); Cottman v. Astrue, No. BPG-08-1753, 2009 WL 4884506, at *6 n.5 (D. Md. Dec. 9, 2009) ("The ALJ's determination that plaintiff could only perform simple tasks, however, is not necessarily inconsistent with a finding that plaintiff can perform the job of surveillance systems monitor"); Webb v. Astrue, No. 4:08-CV-747-Y, 2010 WL 1644898, at *12 n.10 (N.D. Tex. Mar. 2, 2010) ("A job as a city bus driver that requires a [GED Reasoning Level] of three is not necessarily inconsistent with an RFC that includes only the ability to perform simple, routine work tasks"); Robinson v. Astrue, No. 4:08CV1980MLM, 2010 WL 481045, at *18 (E.D. Mo. Feb 4, 2010) ("reasoning level three is consistent with limitations to simple, repetitive and routine tasks"); Blanchard v. Astrue, No. 09-1143-SAC, 2010 WL 2925180, at *11-12 (D. Kan. July 21, 2010) (affirming the Commissioner's decision that claimant could perform the surveillance system monitor job despite a limitation to "simple, routine, repetitive work that is as stress free as possible"); Koontz v. Astrue, No. 08-2153-LAB (WVG), 2010 WL 3339388, at *8-9 (S.D. Cal. July 26, 2010) ("there is no conflict between simple repetitive work and reasoning levels of 2 and 3").

This Court has recently held that there is no apparent conflict between an RFC limitation to simple, routine, repetitive work and Reasoning Level two <u>or</u> three jobs. Thacker v. Astrue, No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *3-4 (W.D.N.C. Nov. 28, 2011) (Reasoning Level three); Vallejo v. Astrue, No. 3:10-cv-00445, 2011 WL 4595259, at *13 (W.D.N.C. August 4, 2011), aff'd, 2011 WL 4597348 (W.D.N.C. September 30, 2011) (Reasoning Level two). Other courts have held that occupations with a DOT Reasoning Level of two are not inconsistent with an RFC limiting the claimant to performing simple, repetitive tasks. See Burnette v. Astrue, No. 2:08cv9, 2009 WL 863372, at *5 (E.D.N.C. March 24, 2009) (ALJ's limitation of the claimant to "short,

6

simple, routine, repetitive tasks" is not inconsistent with jobs with a Reasoning Level of 2); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning consistent with RFC for simple, routine tasks); Flaherty v. Halter, 182 F. Supp. 2d 824, 850 (D. Minn. 2001) ("simple, routine, repetitive, concrete, tangible tasks" are not inconsistent with Reasoning Level two positions).

Plaintiff further argues that the V.E.'s testimony was not responsive to the ALJ's hypothetical question because the ALJ limited Plaintiff to no use of his left upper extremity for gross manipulation. Plaintiff contends the ALJ clarified that to mean that there was essentially no useful ability with his left upper extremity, and the V.E. then identified jobs requiring a helper hand to assist the dominant right hand.

Plaintiff has ignored important parts of the ALJ's question and the V.E.'s response. First, in detailing the limitation to Plaintiff's left upper extremity, the ALJ stated that he was addressing Plaintiff's ability to use his hands for gross manipulation. (Tr. 55-56). Even if the Court interpreted the ALJ's hypothetical restriction as Plaintiff does – that he had no useful ability to use his entire left upper extremity – the V.E. testified that Plaintiff could perform the identified jobs with that restriction. (Tr. 57-58). Under questioning by Plaintiff's attorney, the V.E. stated that the identified jobs could even be performed by an individual with an amputation of his non-dominant hand. (Tr. 57). The V.E. testified that "[m]ost of the jobs could be performed as a one-handed or <u>a one-armed individual</u>." (Tr. 57) (emphasis added). The V.E. further testified that the fast food worker and the marker and checker positions could be performed by an individual with one arm. (Tr. 58). Finally, the V.E. stated that most of the identified jobs could be performed with one arm, and that was why he was reducing his projection of the number of jobs by fifty percent. (Tr. 58).

The V.E. testified initially that more than six thousand of the identified jobs were available

7

in North Carolina. Notwithstanding a fifty percent reduction in the jobs Plaintiff could perform, the V.E.'s testimony still provided substantial evidence that Plaintiff could perform other work in the national economy. Reviewing courts have held that significantly lower numbers of jobs than those at issue here constitute substantial evidence to support a nondisability finding. See Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988) (between 1,350 to 1,800 jobs sufficient); Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986) (between 3,750 and 4,250 jobs sufficient); Daniels v. Apfel, 92 F.Supp.2d 1269, 1283 (S.D. Ala. 2000) (650 jobs sufficient); Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the VE constitute an insignificant number.")

Although the medical records establish that Plaintiff experienced symptoms and difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from his combination of impairments, but was not disabled. Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that

Plaintiff's "Motion for Summary Judgment" (document #12) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED**.

Signed: May 22, 2012

David S. Cayer
United States Magistrate Judge